United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 03, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-33353 (ARP) |
| BARROW SHAVER | § | |
| RESOURCES COMPANY, LLC, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |
| | § | |
| PLAINS MARKETING, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 24-3167 |
| | § | |
| BARROW SHAVER | § | |
| RESOURCES COMPANY, LLC, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION DENYING AXIS ENERGY
SERVICES, LLC AND FORCE PRESSURE CONTROL, LLC'S
MOTION FOR STAY PENDING APPEAL**

## I.  BACKGROUND

Barrow Shaver Resources Company LLC (hereinafter "Debtor"), an independent oil and natural gas company, operates wells in Texas. Starting at least in 2023, it began to use the services of Force Pressure Control, LLC (hereinafter "Force") and Axis Energy Services, LLC (hereinafter "Axis") in connection with its operations. In 2024 because of non-payment, Axis and Force filed Lien Claimant Affidavits against

1

many of the wells that the Debtor operates. (Case no. 24-33353, ECF Nos. 311 and 312).

On July 23, 2024**,** Force, Axis, DOC Energy Services, Inc., Cudd Pressure Control, Inc., Thru Tubing Solutions, Inc., and Genesis Fluids, LLC, filed an involuntary petition under Chapter 7 of the Bankruptcy Code against the Debtor. (Case no. 24-33353, ECF No. 1). On August 19, 2024, the Debtor filed a voluntary Chapter 11 petition, and this Court converted the matter to a voluntary chapter 11 case under the Bankruptcy Code. (Case no. 24-33353, ECF Nos. 46-49).

The Debtor sells crude oil to Plains Marketing, L.P. (hereinafter "Plains"), the purchaser, under a Crude Oil Purchase Contract. (ECF No. 1). On May 3, 2024, Force sent a letter to Plains stating that it is a mineral lien claimant under Chapter 56 of the Texas Property Code and has a lien against the Debtor totaling $2,054,436.24 plus legal interest, attorney's fees and other matters allowed by law. (ECF No. 1-1). Force requested, under Chapter 67 of the Texas Property Code, that Plains withhold payment to the debtor "up to the amount of [Force's] claim from all oil and gas proceeds attributable to the operating and working interest in the wells located on the Lease until such time as you receive notice that the [Force] Claim has been satisfied." (ECF No. 1-1). Similarly, on July 15, 2024, Axis also sent a letter to Plains stating that it is a mineral lien claimant under Chapter 56 and has a lien against the Debtor totaling $452,070.57 and requesting that Plains withhold payment to the Debtor under Chapter 67 of the Texas Property Code. (ECF No. 1-1).

Following these letters, Plains on August 17, 2024, filed a Complaint for Interpleader (hereinafter the "Interpleader Adversary"). (ECF No. 1). Plains informed the Court in its complaint that it "has held in suspense certain funds in the amount of $2,506,506.81 which may be subject to these liens (the 'Withheld Funds')." (ECF No. 1). Plains said it was in doubt regarding who should receive the Withheld Funds and pursuant to a stipulation and court order, interplead the funds into the Registry of the Court. (ECF No. 19). On September 6, 2024, the Debtor answered the complaint and crossclaimed against Force and Axis with

four causes of actions: (1) Turnover of the Withheld Funds Under 11 U.S.C. § 543, (2) Turnover of the Withheld Funds Under 11 U.S.C. § 542, (3) Axis and Force Willfully Violated the Automatic Stay, and (4) Damages for Willful Violation of the Automatic Stay. (ECF No. 26). Axis and Force subsequently, filed answers to both the Complaint and Crossclaim. (ECF Nos. 27 and 28).[1] On November 11, 2024, Axis and Force both filed Notices of Perfection, Continuation, or Maintenance of Lien Pursuant to 11 U.S.C. 546(b). (Case no. 24-33353, ECF Nos. 311 and 312). In December of 2024, Axis and Force filed secured proofs of claims for the work they performed in connection with approximately 30 leased wells.

During a hearing on October 21, 2024 in the Interpleader Adversary, this Court directed that the parties "assume" that Axis and Force hold valid mineral liens under Chapter 56 and requested that the parties brief whether Chapter 56 mineral lien claimants are Chapter 67 interest owners and therefore entitled to the protection of Chapter 67.[2] The debtor, as well as Axis and Force together, filed extensive summary judgment motions (hereinafter "Summary Judgment Motions") and responses on the issue of whether Chapter 56 mineral lien claimants are interest owners under Chapter 67. (ECF Nos. 42, 43, 47, and 48). This Court heard argument on the motions on December 10, 2024. The Court issued an order on December 31, 2024, where it held that based on the plain language of Chapters 56 and 67, the legislative history of Chapter 67, the caselaw regarding the enforcement of Chapter 56 liens, and the differences between Texas and Oklahoma law[3], Chapter 56 lien claimants are not interest owners entitled to the protections of Chapter 67 under the facts presented. (ECF No. 58). Therefore, the Court

---

[1] The crossclaims remain pending before the Court.
[2] The parties reserved the right to challenge this assumption in the future.
[3] Axis and Force had argued that this Court should interpret Chapter 67 similar to how the Oklahoma Supreme Court had interpreted an Oklahoma statute covering the same subject matter.

granted the Debtor's Cross-Motion for Partial Summary Judgment and denied Axis and Force's Motion for Summary Judgment.

On January 13, 2025, Axis and Force filed a Motion for Leave to Appeal Interlocutory Order, a Notice of Appeal, and a Motion to Stay Pending Appeal. (ECF Nos. 60, 61, and 62). The appeal has been assigned to United States District Judge Andrew S Hanen and docketed at 25-cv-0206. (ECF No. 67). The Motion for Leave to Appeal remains pending. Axis and Force filed their Appellants' Statement of Issues on Appeal as well as Designation of Record on Appeal on January 27, 2025. (ECF Nos. 73 and 74). The Debtor filed its objection to Axis and Force's Motion to Stay Pending Appeal on February 3, 2025, and Axis and Force filed their reply on February 6, 2025. (ECF Nos. 77 and 81). The Court conducted an evidentiary hearing on February 12, 2025, on the Motion to Stay Pending Appeal and took the matter under advisement.

## II.   JURISDICTION AND VENUE

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Motion to Stay Pending Appeal stems from the Court's decision on the Summary Judgment Motions. As the Court has previously indicated in this matter, it has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(K), and 157(b)(2)(O). And venue is proper under 28 U.S.C. §§ 1408 and 1409.

### III.    LEGAL STANDARD

Under Rule 8007(a)(1)(A) of the Federal Rules of Bankruptcy Procedure, "Ordinarily, a party must move first in the bankruptcy court for . . .a stay of the bankruptcy court's judgment, order, or decree pending appeal." The Fifth Circuit has stated that a stay "is an extraordinary remedy." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019) (citing to *Nken v. Holder*, 556 U.S. 418, 437 (2009) (Kennedy, J., concurring)). And that "[i]t is also an equitable one committed to this court's discretion." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019) (citing to *Nken v. Holder*, 556 U.S. 418, 433 (2009)) and *Ruiz v. Estelle*, 666 F.2d 854, 856 & n.4 (5th Cir. 1982)). Courts apply the following four factors:

> (1) Whether the movant has made a showing of likelihood of success on the merits;
>
> (2) Whether the movant has made a showing of irreparable injury if the stay is not granted;
>
> (3) Whether the granting of the stay would substantially harm the other parties; and
>
> (4) Whether the granting of the stay would serve the public interest.

*In re First South Savings Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987). The United States Supreme Court has stated, "The first two factors of the traditional standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Fifth Circuit has stated previously, "Although four factors are relevant to determining entitlement to a stay, the first (likelihood of success on the merits) is arguably the most important." *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005) (*See also Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir.1998)).

The Fifth Circuit has said, "To satisfy the first element of likelihood of success on the merits, the [party's] evidence in the

5

preliminary injunction proceeding 'is not required to prove [his] entitlement to summary judgment.'" *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011) (citing to *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009)).  And "[a]ll courts agree that plaintiff must present a prima facie case but need not show that he is certain to win." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (quoting Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 11A Federal Practice & Procedure § 2948.3 (2d ed. 1995)).  Furthermore, "To assess the likelihood of success on the merits, we look to "standards provided by the substantive law." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (quoting *Roho, Inc. v. Marquis,* 902 F.2d 356, 358 (5th Cir.1990)).  However, the first factor is more nuanced:

> In *Ruiz I,* 650 F.2d 555 (5th Cir. 1981), we stated that "on motions for stay pending appeal the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* at 565. In *Ruiz II,* 666 F.2d 854 (5th Cir. 1982), we cautioned against reading *Ruiz I* as "a coup de grace for the likelihood-of-success criterion in this circuit." *Id.* at 856. We said: "Likelihood of success remains a prerequisite in the usual case even if it is not an invariable requirement. Only 'if the balance of equities (*i.e.* consideration of the other three factors) is ... *heavily tilted* in the movant's favor' will we issue a stay in its absence, and, even then, the issue must be one with patent substantial merit." *Id.* at 857 (quoting *Ruiz I,* 650 F.2d at 565–66) (emphasis added by *Ruiz II* court).

*In re First South Sav. Ass'n*, 820 F.2d 700, 709 n.10 (5th Cir. 1987).

Additionally, in the case of an interlocutory appeal such as this, the movant "must first establish the likelihood that its appeal will even be permitted, given that it is interlocutory. Then, [it] must establish its likelihood of success on the *underlying* merits of its appeal." *In re Mounce*, 04–5182, 2008 WL 2714423, at *2 (Bankr. W.D. Tex. 2008) (original emphasis).

As the Fifth Circuit has explained regarding the second factor of irreparable injury:

> In short, "[t]he key word ... is *irreparable,*" and an "injury is 'irreparable' only if it cannot be undone through monetary remedies." Thus, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weigh[ ]s heavily against a claim of irreparable harm." The absence of an available remedy by which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury.

*Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985) (internal citations omitted). However, "[S]ome courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (*See also Lee v. Bickell,* 292 U.S. 415, 421 (1934)). The Second Circuit attempted to create an insolvency exception to the rule regarding the availability of monetary damages, but the United States Supreme Court rejected it. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999).

Under the third factor the "Court [must] balance the hardships of the parties and find whether the harms outweigh any likely irreparable

injury to the movant absent a stay." *In re Dernick*, 18-32417, 2019 WL 236999, at *4 (Bankr. S.D. Tex. Jan. 16, 2019) (*See also Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC*, 710 F.3d 579, 585 (5th Cir. 2013)). And regarding the final factor, "In bankruptcy, the public policy is to have an orderly administration of the debtor's assets via their bankruptcy estate . . ." *In re Dernick*, 18-32417, 2019 WL 236999, at *5 (Citing to *In re Lots by Murphy, Inc.*, 430 B.R. 431, 436 (Bankr. S.D. Tex. 2010) and *See also In re Babcock & Wilcox*, No. Civ. A. 00-1410, 2000 WL 1092434, at *3 (E.D. La. Aug. 2, 2000)).

A party "must prove whether a stay pending appeal should be granted by a preponderance of the evidence." *In re TMT Procurement Corp.*, 13–33763, 2014 WL 1577475, at *4 (Bankr. S.D. Tex. 2014).

## IV.    DISCUSSION

This Court recognizes the importance of this issue for all parties involved and appreciates the thorough briefing. Furthermore, the evidentiary hearing on February 12, 2025, has been instrumental to the Court's review of this matter. Rather than reiterate any of the arguments by the parties, this Court will instead provide its own analysis of whether Axis and Force satisfy the four-factor test for a stay on this matter pending appeal.

### A.    Axis and Force have not made a showing of likelihood of success on the merits

Axis and Force have not a made a showing of likelihood of success on the merits.[4] While this Court recognizes that the parties do not need

---

[4] While Axis and Force did not present arguments on the likelihood of its appeal being permitted, this Court will assume that the appeal will be permitted. Axis and Force are appealing an interlocutory order and "'Section 158 does not establish any standards to guide the district courts' discretion' whether to grant leave to appeal an interlocutory order." *In re Royce Homes LP*, 466 B.R. 81, 93 (Bankr. S.D. Tex. 2012) (quoting *In re Gray*, 447 B.R. 524, 533 (E.D. Mich. 2011)). And

8

to show entitlement to summary judgment or show that they are certain to win, the arguments before the court as well as the evidence presented at the hearing, do not provide the court with a basis to find that Axis and Force will be successful on appeal. This Court considered the legal question of whether Chapter 56 mineral lien claimants are Chapter 67 interest owners and therefore entitled to the protection of Chapter 67 and after thoroughly reviewing the plain language of Chapters 56 and 67, the legislative history of Chapter 67, the caselaw regarding the enforcement of Chapter 56 liens, and the differences between Texas and Oklahoma law, it did not find the arguments of Axis and Force persuasive. Other than reiterate its original arguments on the

---

"Although the Fifth Circuit has expressly reserved the question, *see Ichinose v. Homer Nat'l Bank (In re Ichinose),* 946 F.2d 1169, 1177 (5th Cir. 1991), district courts within the Fifth Circuit have looked to the factors listed under 28 U.S.C. § 1292(b) in determining whether to grant such a motion. . ." *In re Royce Homes LP*, 466 B.R. 81, 93 (Bankr. S.D. Tex. 2012) (internal citations omitted). 28 U.S.C. § 1292(b) states in part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

This would be a high burden for Axis and Force to meet since this matter is in essence a collection action brought in connection with a bankruptcy proceeding.

9

Summary Judgment Motions, Axis and Force did not show the Court why it is likely that they will be successful at the appellate level.

Furthermore, Axis and Force do not present a substantial case on the merits where a serious legal question is involved, in which the balance of the equities weighs heavily in favor of granting the stay. Axis and Force argue:

> [T]he question of whether M&M Lien Claimants are interest owners under Chapter 67 is also a serious legal question. The interpretation of Chapter 67 is a case of first impression in the Texas courts and will have far-reaching effects on the oil and gas industry. The M&M Lien Claimants have a substantial case on the merits and will show below that the balance of the equities weighs in favor of granting the stay.

(ECF No. 62 at 6). Contrary to the assertions of Axis and Force, while the question of whether Chapter 56 mineral lien claimants are Chapter 67 interest owners and therefore entitled to the protection of Chapter 67 was a matter of first impression, that in of itself does not make it into a serious legal question.  As has previously been stated in this District, "A serious legal question exists when legal issues have far-reaching effects, involve significant public concerns, or have a broad impact on federal/state relations." *In re Dernick*, 18-32417, 2019 WL 236999, at *3 (Bankr. S.D. Tex. Jan. 16, 2019) (*See also Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23-24 (5th Cir. 1992); *U.S. v. Baylor University Medical Center*, 711 F.2d 38, 40 (5th Cir. 1983)).  While this legal question is important to the parties involved and, potentially, to a nareow class of service providers, it does not have far reaching effects, involve significant public concerns or have a broad impact on federal/state relations.  Other than conclusory statements, Axis and

10

Force have not provided the Court with any evidence showing that this is a serious legal question.

### B. Axis and Force have not made a showing of irreparable injury if the stay is not granted

At the outset of analyzing this factor, it important to note that while Axis and Force have the burden to demonstrate by a preponderance of the evidence that a stay pending appeal should be granted, they only presented Axis's Chief Financial Officer (CFO) Christopher Boone at the evidentiary hearing on February 12, 2025, and no employee or managerial officer from Force. This Court cannot find that Force has made a showing of irreparable injury when Force did not present any employee or managerial officer for testimony. This Court cannot transfer any of its findings regarding the testimony of the CFO of Axis to Force. They are separate companies, and the CFO of Axis did not provide any testimony that he had intimate knowledge of how the Court's decision on the Summary Judgment Motions would affect Force. Furthermore, it is important to note that this Court finds it extremely difficult to find a showing of irreparable injury to either party when it considers that even if the Court had ruled differently, Axis and Force would then have still been required to prove that they had valid Chapter 56 liens. The Withheld Funds deposited in the Registry of the Court would not have immediately been transferred to Axis and Force.

During Mr. Boone's testimony, the Court asked him whether the receivables implicated in this matter had been written off and Mr. Boone stated, "Fully reserved on, yes." (ECF No. 100 at 50:24 – 51:6). Furthermore, on direct examination when asked "Does Axis need this Money?" Mr. Boone stated, "Axis certainly does -- will not go bankrupt today or not make payroll if we don't have this money today, short-term." (ECF No. 100 at 30:24 – 31:1). When asked, "What is the urgency of trying to -- what is the urgency of collecting this money?" Mr. Boone responded in part, "Overall, you know, it is a -- we can't have customers --end of the day, we won't be in business if even a small percentage of

our customers' accounts become uncollectible . . ." (ECF No. 100 at 31:2 – 12). It appears that Axis has already made the business decision for accounting purposes that it will not be collecting the money in the near term. And it also appears that Axis' need for the money is not due to a financial urgency.

It is important to note that Axis and Force were two of the several parties who initiated the bankruptcy proceeding against the Debtor through an involuntary petition. As mentioned previously, economic losses are not typically irreparable when monetary damages are available. Both Axis and Force initiated this case and should be aware and appear to be aware of the applicable bankruptcy laws. Axis and Force already filed Lien Claimant Affidavits, Notices of Perfection, Continuation, or Maintenance of Lien Pursuant to 11 U.S.C. 546(b), and secured proofs of claims for their services in connection with approximately 30 leased wells of the Debtor. Assuming they have valid liens, Axis and Force's Secured Proofs of Claims provides them a potential pathway to receiving payment. And furthermore, given the Debtor testified that it planned to sell its assets, 11 U.S.C. § 363(f) protects Axis and Force so that their liens would attach to the proceeds of such a sale.

A review of the briefing in this case as well as the evidentiary hearing demonstrates that Axis and Force have not met their burden when it comes to this factor, they have not provided the Court with evidence of how they will be irreparably injured if the stay is not granted. Mr. Boone's testimony did not persuade the court regarding irreparable injury to Axis, and Force provided no testimony at all.

### C. Granting of the stay will substantially harm the Debtor

During the hearing, the Debtor called its Chief Restructuring Officer, James Katchadurian, to testify. He testified that the debtor has about

$8.5 million dollars in its bank accounts currently and that he expects the debtor to run out of money around June. When asked how the Debtor would use the money implicated in this motion, Mr. Katchadurian stated:

> So as part of my role to, you know, sell the assets of the company, we've been trying to look for projects where we can increase production and maintain the wells that we have in place to maximize asset value in a sale. That two and half million dollars could certainly go to additional fracs and other maintenance workover-type activities that would support production and possibly increase production at this time, when we're in the midst of a sale process. . .
>
> I think we could increase production at least 500 barrels a day. . .

(ECF No. 100 at 58:16 – 60:1). And when asked about the financial impact of the fracking, he said, "Conservatively, at oil prices today, about half a million dollars in additional cash flow." (ECF No. 100 at 60:2 – 5). Mr. Katchadurian said that in six months, it could generate about $3 million dollars. Preventing the Debtor from receiving receivables from Plains is only harming the Debtor further. Those receivables would provide the Debtor with the ability to significantly increase its cash flow and raise the odds that the Debtor successfully completes its Chapter 11. Granting the stay would harm the Debtor because it would not be able to pursue its crossclaims for the release of the withheld funds.

### D. Axis and Force have not shown that granting of the stay will serve the public interest

In their Motion for Stay Pending Appeal, Axis and Force write, "Here, the interpretation of Chapter 67 of the Texas Property Code can impact the oil and gas industry, not just the parties in this adversary proceeding. This case of first impression for Texas will have ramifications throughout the oil and gas industry as a whole." (ECF No. 62 at 9). And that "[t]he public interest considerations weigh in favor of granting a stay pending resolution of the appeal that will affect so many." *Id.* The Debtor argues that "Axis/Force give no explanation as to how a stay pending appeal will promote the public interest. In fact, they do not adequately identify the public interest they claim will be promoted by a stay." (ECF No. 77 at 20). And furthermore, "The oil and gas industry is not equivalent to 'the public,' but even if it were, Axis/Force wholly fail to satisfy this factor by identifying what public policy is in view and how a stay pending appeal will further that policy." *Id.* In its reply, Axis and Force state that "Whether Axis and Force, and all other service companies with liens under Chapter 56, have liens upon the production would provide a new method for oil and gas service companies of being repaid for good and valuable work" and that "[t]he stay prevents delay and prevents the possibility of duplicated litigation efforts." (ECF No. 81 at 7). In closing argument at the hearing, Axis and Force argued:

> You heard testimony that the ability to have confidence in extending credit to new upstart companies or to current companies or larger companies would benefit and unlock further the potential Texas has to produce oil and gas. More producers on the ground, more jobs created, more people working. That was the testimony of Chris Boone.

(ECF No. 100 at 89:6–11). Upon a review of the arguments by Axis and Force, this Court does not find that Axis and Force have shown how a stay would serve the public interest. There is no doubt that the oil and gas industry is important. Furthermore, there is no doubt that the issue

of whether Chapter 56 mineral lien claimants are Chapter 67 interest owners and therefore entitled to the protection of Chapter 67 is an important issue to Axis and Force. But Axis and Force have failed to show the importance of that issue to the public at large, as well as how a stay in this matter would serve the public interest. Axis and Force's public interest arguments here are better addressed to the legislature for an amendment to Chapter 67 to include Chapter 56 lien claimants as interest owners.

## V.   CONCLUSION

For the foregoing reasons, Axis and Force have not shown by a preponderance of the evidence that a stay should be granted. None of the factors favor Axis and Force. Axis and Force have not made a showing of likelihood of success on the merits, nor have they made a showing of irreparable injury if the stay is not granted. The stay would harm the debtor, and Axis and Force have not shown how granting the stay would serve the public interest.

Therefore, this Court DENIES the Motion for Stay Pending Appeal.

Signed: March 03, 2025

*[signature]*
Alfredo R Pérez
United States Bankruptcy Judge